EMLEE EQUIPMENT LEASING CORPORATION *v.* WATERBURY TRANSMISSION, INC., ET AL.

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE NO. 96721
WATERBURY

Memorandum filed January 23, 1991

*Matzkin, Krug & Danen,* for the plaintiff.

*Rinaldi, Zipoli & Bruno,* for the named defendant.

*Alvin Rosenbaum,* for the defendant Marvin S. Mann.

BLUE, J. This is an action brought by the plaintiff, Emlee Equipment Leasing Corporation, against the named defendant and the defendant Marvin S. Mann. The named defendant has been defaulted, but Mann is vigorously contesting the case against him. The plaintiff alleges that it leased a machine known as a C.M.S. Digital Pipe Bender to the named defendant and that the named defendant defaulted on the lease. The plaintiff alleges further that Mann jointly and severally guaranteed payment of the lease.

On July 17, 1990, Mann filed a general appearance. On August 9, 1990, he filed a motion to dismiss. That motion was withdrawn without prejudice, and an amended motion to dismiss was filed on September 11, 1990. On September 24, 1990, the court, *Barnett, J.,* denied the amended motion to dismiss.

On October 31, 1990, Mann filed special defenses and a counterclaim. His third special defense (the only one involved here) stated: "Paragraph 17, of [the] lease recites that any action to enforce the within lease, shall be brought in the Supreme Court of the State of New York, County of Nassau, or the District Court of Nassau County. Therefore, the courts of this state lack jurisdiction to hear the within matter." This "defense" was not asserted in his amended motion to dismiss. His counterclaim stated that the pipe bender was defective, that the plaintiff failed to take remedial action when notified of the defect, that the lease payments required were "far in excess of the fair market value of said equipment" and that the plaintiff had engaged in an unfair trade practice in violation of the Connecticut Unfair Trade Practice Act (CUTPA), General Statutes §§ 42-110a through 42-110q. The plaintiff has now moved to strike both the third special defense and the counterclaim. For the following reasons, the motion to strike both pleadings is granted.

Mann's third "special defense" has two fundamental defects, each of them fatal. It is, in the first place, not a special defense at all. In any event, it asserts a claim that he is now barred from making.

The pleading of special defenses is governed by Practice Book § 164, which provides: "Facts which are consistent with [the plaintiff's] statements but show, notwithstanding, that he has no cause of action, must be specially alleged." If the existence of a fact does not negate the existence of the plaintiff's allegations but independently destroys liability, then evidence of that fact may be admitted only under a special defense. *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 7, 327 A.2d 583 (1973). The third special defense asserted here, however, has nothing to do with the underlying liability but, rather, asserts that the action has been brought in an improper forum. This is a legal claim necessarily

directed to the court rather than to the factfinder and, if it is to be asserted at all, must be asserted by way of a motion to dismiss. Practice Book § 143.

Practice Book § 142 provides: "Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance." This time limit had long since expired by the time that Mann filed his special defense. Mann correctly points out that a claim of lack of jurisdiction over the subject matter may be raised at any time; Practice Book § 145; but his special defense has nothing to do with lack of subject matter jurisdiction. " 'Jurisdiction of the subject-matter is the power to hear and determine cases of the general class to which the proceedings in question belong.' 15 Corpus Juris, 734 . . . ." *Case* v. *Bush,* 93 Conn. 550, 552, 106 A. 822 (1919). "Such jurisdiction relates to the court's competency to exercise power, and not to the regularity of the court's exercise of that power." *State* v. *Malkowski,* 189 Conn. 101, 105, 454 A.2d 275 (1983). The old notion that forum selection clauses in contracts "are improper because they had to 'oust' a court of jurisdiction in hardly more than a vestigial legal fiction." *Bremen* v. *Zapata Off-Shore Co.,* 407 U.S. 1, 12, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972).

There can be no question that the Superior Court of Connecticut has subject matter jurisdiction to hear the garden variety contract dispute presented in the present case. The only question is whether, having this jurisdiction, it should decline to exercise it to give effect to the expectations of the parties manifested in their contract. There may well be legitimate reasons for the court to do so; see *United States Trust Co.* v. *Bohart,* 197 Conn. 34, 42, 495 A.2d 1034 (1985); but the claim of improper forum must be made within the time limits established by Practice Book § 142. The invocation of a forum selec-

tion clause in these circumstances is really an argument that personal jurisdiction should not be exercised. See L. Brilmayer, An Introduction to Jurisdiction in the American Federal System (1986) pp. 32–33. "Unlike subject matter jurisdiction, however, personal jurisdiction may be created through consent or waiver." *United States Trust Co.* v. *Bohart,* supra, 39; see *Ins. Corporation of Ireland, Ltd.* v. *Compagnie des Bauxites,* 456 U.S. 694, 703–704, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982). Such a waiver has occurred here, and the defendant Mann, consequently, may no longer assert his claim of improper forum.

Since the plaintiff has attacked Mann's counterclaim by a motion to strike, the facts giving rise to the counterclaim must be taken from that document. See *Kilbride* v. *Dushkin Publishing Group, Inc.,* 186 Conn. 718, 719, 443 A.2d 922 (1982). Those facts, moreover, must be "construed in a manner most favorable to the pleader." *Amodio* v. *Cunningham,* 182 Conn. 80, 82, 438 A.2d 6 (1980). Mann has alleged that the plaintiff leased a pipe bender to the named defendant that was defective and inoperable, that it did not correct the defects when notified of them, and that the lease payments were far in excess of what the fair market value of the equipment would justify. The lease, copies of which are appended to both the complaint and the counterclaim, provides for a total rental amount of $23,800 paid over a term of sixty months.

General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." This statute was modeled after the Federal Trade Commission Act, 15 U.S.C. § 45 (a) (1); see 16 H.R. Proc., Pt. 14, 1973 Sess., p. 7321, remarks of Representative Howard A. Newman; and § 42-110b (b) requires the courts of this state to

be guided by interpretations given to the federal act by the Federal Trade Commission (FTC) and the federal courts.

In *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.,* 216 Conn. 200, 215, 517 A.2d 69 (1990), the Connecticut Supreme Court reviewed the FTC's "cigarette rule," which the court has adopted for determining when a practice is unfair: " ' " '(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].' *Conaway* v. *Prestia,* [191 Conn. 484, 492–93, 464 A.2d 847 (1983)], quoting *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 244–45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972)." *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 567–68, 473 A.2d 1185 (1984); see Statement of Basis and Purpose of Trade Regulation Rule 408, "Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking," 29 Fed. Reg. 8324, 8355 (1964).' *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 239, 520 A.2d 1008 (1987); *Daddona* v. *Liberty Mobile Home Sales, Inc.,* 209 Conn. 243, 254, 550 A.2d 1061 (1988).

" 'Moreover, in 1980 the commission "reviewed those factors and concluded that '[u]njustified consumer injury is the primary focus of the FTC Act, and the most important of the three . . . criteria.' " . . . "[T]he Commission explained that regulation is permissible only if a practice causes [unjustified] injury that is substantial . . . ." ' " (Citations omitted.) *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.,* supra, 215–16.

*A-G Foods* also notes that "[t]he Federal Trade Commission has identified the 'four primary categories of practices which have been prohibited as unfair: (1) withholding material information; (2) making unsubstantiated advertising claims; (3) using high-pressure sales techniques; and (4) depriving consumers of various post-purchase remedies.' *American Financial Services* v. *F.T.C.*, 767 F.2d 957, 979 (D.C. Cir. 1985), cert. denied, 475 U.S. 1011, 106 S. Ct. 1185, 89 L. Ed. 2d 301 (1986)." *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, supra, 216 n.9

Even examined in the light most favorable to Mann, his counterclaim alleges nothing of the sort. Basically, the counterclaim alleges that, on a single occasion, one business leased to another a piece of equipment that turned out to be defective and subsequently failed to remedy the defect. There is no allegation of any fraudulent or deceptive practice or bad faith in procuring the original leasing agreement or that this was anything but an arms-length transaction between two business enterprises. "A simple breach of contract, even if intentional, does not amount to a violation of the Act; a [claimant] must show substantial aggravating circumstances attending the breach to recover under the Act . . . . " *Bartolomeo* v. *S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989); *United Roasters, Inc.* v. *Colgate-Palmolive Co.*, 649 F.2d 985, 992 (4th Cir. 1981); *D'Ercole Sales, Inc.* v. *Fruehauf Corporation*, 206 N.J. Super. 11, 25, 501 A.2d 990 (1985). Neither substantial aggravating circumstances nor anything else that would bring the alleged breach within the ambit of CUTPA is alleged here. For that reason, the counterclaim must be stricken.

The plaintiff's motion to strike both the special defense and the defendant's counterclaim is granted.