[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case raises the question to what extent a technical violation of the Home Improvement Act excuses payment to a builder for a substantially complete addition to a residence and allows a claim for damages by the homeowners.
The plaintiffs are owners of property on Arrowhead Drive in Orange. In early 1989 the plaintiff Peter Habetz contacted the defendant, Ken Condon, by telephone about constructing an addition on the plaintiffs' residence. Meetings and discussions followed, CT Page 7773 and when Habetz refused to hire an architect to design the addition, Condon prepared preliminary plans with his consent. Condon also prepared a five page contract which outlined the work to be performed for a contract price of $103,000, a time schedule for payments based on designated stages of construction of the addition. The written agreement was signed by Condon and Habetz on April 20, 1989.
As the work progressed Habetz made minor changes in the addition and requested additional work from Condon and some of the subcontractors. The extra work agreed to between Condon and Habetz was itemized on a two page written proposal (Ex. 3) which Condon asked Habetz to sign numerous times. Despite these requests Habetz failed to sign the list of extras, although he pressed for the additional work to be done. By August 10, 1989 most of the work under the original contract was completed, and the plaintiffs had paid the defendant $93,000 of the $103,000 contract price. When Condon requested the $10,000 balance on the contract, Habetz made some excuses for nonpayment and indicated he wanted more extra work performed. Subsequently he made complaints about some of the work. Condon substantially completed the extra work on the written proposal which Habetz had agreed to but did not sign. The cost of that work, itemized on Exhibit 3, is $6,244.
The first count of the complaint claims that some of the work was done in a negligent and unworkmanlike manner and that some of the work under the contract was incomplete. The defects claimed in paragraph 3 of the amended complaint are as follows:
(a) Anderson window missing to second floor addition;
(b) tile splashboard missing;
(c) cracked floor tiles in kitchen;
(d) replaced siding does not match existing siding;
(e) Townsend paneling missing;
(f) insulation damaged the trim molding;
 (g) tarpaper not laid under shingles on roof in violation of Connecticut State Building Code R-803.2;
(h) damaged antenna system caused by roof construction;
 (i) bathroom tile floor and grouting of shower, floor and toilet unfinished;
(j) insulation throughout addition incomplete; CT Page 7774
(k) ceiling, wall and floor water damage;
(l) central vacuum system incomplete;
(m) chimney cracked;
(n) outside deck and support columns not to code and unsafe;
(o) fiberglass hot tub cracked caused by shifting deck.
The plaintiffs have not proven by a fair preponderance of the evidence some of these claims of defective or incomplete work, including the following subsections of paragraph 3 of the complaint: (a), (b), (e), (h), (l), (n) and (o). These claims of damages were not proven for one or more of the following reasons: (1) insufficient evidence; (2) adequate substitute work; (3) the work requested is beyond the requirements of the contract; (4) the damage was caused by someone other than the defendant; or (5) the condition or work was consented to by the plaintiffs. The defendant installed all of the Townsend panelling that the plaintiffs were entitled to under the contract and more. The television antenna was not damaged by the roof construction done by the defendant's subcontractors, and it was replaced on the roof exactly where the plaintiffs requested. The problems with the deck were caused by the plaintiffs' own conduct in moving a fiberglass hot tub onto the deck, which was not designed to support it when filled with water. Building the deck to carry the fiberglass hot tub was not part of the plans or contract. The deck and support columns were adequate for normal use. While the plans called for four Anderson windows, they were replaced by three larger windows and a medicine cabinet worth at least the same value, and with the consent of the plaintiffs.
While some of the cracked floor tiles in the kitchen were replaced, $212 is allowed to replace other broken tiles. The siding did not conform to the contract and $1,317.50 is allowed for the siding. An allowance of $275 is adequate to replace the damaged trim molding, and $275 is also allowed to complete the bathroom.
The major problem is a leaky roof due to defective construction, aggravated by failure to use tarpaper in accordance with customary building practice and the requirements of the Connecticut Building Code. The original plans originally called for tarpaper as an underlayment. The existing house did not have tarpaper under the shingles. Condon and Habetz discussed whether tarpaper should be used, and Habetz consented to completing the roof on the addition without it in return for a credit for not installing it. The plaintiffs spent $3,365 to repair ceiling, wall CT Page 7775 and floor water damages from the leaky roof, and an additional $400 is allowed for unrepaired damage.
The entire roof on the addition has to be replaced which requires removing the existing roof, putting down tarpaper and reshingling the roof. The evidence was conflicting as to the cost of the required work, but the reasonable value of labor and materials for roof repairs and to dispose of existing roof materials is $8,420. An additional $2,078 is allowed to complete the inadequate insulation, and $200 is required to repair the cracked chimney.
The plaintiffs contend in the second count of the complaint that the construction work performed by the defendant was subject to the Home Improvement Act and that the written agreement of April 20, 1989 violated 20-429 (a) of the General Statutes. The complaint does not state how the plaintiffs were injured or sustained any financial loss because of noncompliance with the statute, which provides as follows:
 "No home improvement contract shall be valid or enforceable against an owner unless it: (1) is in writing, (2) is signed by the owner and contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor."
This version of the statute was effective October 1, 1988. The contract between the parties here was made on April 20, 1989. The defendant was a contractor subject to the Home Improvement Act (HIA) and the contract and written list of extras were a home improvement contract. The contract complied with the version of20-429 (a) which existed prior to October 1, 1988, since it was in writing and contained the entire agreement between the parties. The original contract for $103,000 meets all of the requirements of the amended statute except subsection (6). Page 5 of the contract contains what amounts to starting and completion dates. Section20-429 (e) of the General Statutes also provides that each home improvement contract is considered a home solicitation sale pursuant to chapter 740 and is subject to its requirements. Chapter 740 of the General Statutes is the Home Solicitation Sales Act (HSSA), 42-134a et seq., C.G.S. The requirements for the cancellation provision in the HSSA are contained in 42-135a C.G.S. CT Page 7776 The notice informs the buyer in a home solicitation sale that there is the right to cancel the transaction without penalty or obligation within three business days from entering into the transaction, but if the buyer cancels, any goods delivered to the buyer under the contract or sale must be made available to the seller at the buyer's residence in substantially as good condition as when received, and if the buyer fails to do so he remains liable for performance of all obligations under the contract. At the trial there was no claim or evidence that any provision of chapter 740 was not complied with by Condon except the omission of the cancellation notice from the written contract.
The parties orally agreed to the extras itemized on the separate written proposal. If it had been attached to the original contract, it would meet all of the requirements of 20-429 (a) except for the omissions in the original contract, and the additional requirement that any change in the terms and conditions of a contract must be in writing and signed by the owner and the contractor. As previously noted, Condon tried to get Habetz to sign the written list of extras reflecting their agreement on several occasions, and the failure to have a signed list of extras here was caused by the owner and not the contractor. Section 20-429
(a) is intended as a protection for a homeowner against enforcement of a home improvement contract which does not comply with the statute. It is questionable whether it can be used as an offensive weapon to recover damages or refunds of previously undisputed progress payments made while the work was performed. See Barrett Builders v. Miller, 215 Conn. 316, 327n.
The defendant has filed a counterclaim against Habetz. The first count claims breach of contract for failure to pay the balance of $10,000 due under the contract of April 20, 1989. The second count claims that Habetz orally agreed to pay to Condon for the work and amount of extras in the written proposal. The defendant claims bad faith by Habetz in allowing Condon to complete the work and in failing to sign the written proposal and that Habetz was unjustly enriched by the value of the additional work and materials provided as extras.
Habetz filed a special defense to the counterclaim based on20-427, 20-429 and 42-135a of the General Statutes and the partial payment of $93,000 towards the contract price. There is no evidence that the defendant is not a registered home improvement contractor or any violation of 20-427. With the exception of omission of the notice of the right of cancellation in the contract there is no violation of 20-429 or 42-135a of the General Statutes. A series of decisions have barred recovery by a contractor against a homeowner for noncompliance with 20-429. Caulkins v. Petrillo, 200 Conn. 713; Barrett Builders v. Miller,215 Conn. 316; A. Secondino Son, Inc. v. LoRicco, 215 Conn. 336; CT Page 7777 Liljedahl Brothers, Inc. v. Grigsby, 215 Conn. 345; Sidney v. DeVries, 215 Conn. 350. All these cases were actions by the contractor to recover damages, and except for Barrett Builders, had no written contract between the contractors and the owners. In Barrett Builders the written contract, which did not comply with the statute, was for replacement of kitchen cabinets and countertops for a total contract price of $9,783 and the homeowner stopped payment on a check for the second installment which was issued only eight days after commencement of the work. It was held that the owner was allowed by the statute in the absence of an allegation of bad faith to repudiate the contract, and the contractor was not allowed to bring an action either for quasi-contract or unjust enrichment. 215 Conn. 316, 322, 328. The other cases decided at the same time, namely Secondino, Liljedahl Brothers, and Sidney also hold that a contractor cannot circumvent the requirements of 20-429 by claims of quasi-contract, quantum meruit or unjust enrichment. The opinions indicate, however, that noncompliance of a contractor with the statute is excused if there is proof of bad faith on the part of the homeowner. Barrett Builders v. Miller, supra, 328; A. Secondino Son, Inc. v. LoRicco, supra, 340; Liljedahl Brothers, Inc. v. Grigsby, supra, 350.
The concept of bad faith generally implies or involves both "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Black's Law Dictionary, Fourth Edition. The evidence in this case shows bad faith on the part of Habetz. While he was a homeowner in this case, he is also in the business of installing swimming pools and related improvements to property which are home improvements under 20-419 (4) of the General Statutes, which makes him a "contractor" under 20-419 (3). He is not the innocent, unsophisticated homeowner for which the consumer protection remedy in 20-429 and other sections of the HIA were intended. Presumably he has some knowledge of the requirements of the HIA, including the provisions for a home improvement contract in 20-429 (a). The work on the addition went on over a period of several months, and no effort is made to cancel the contract. It was his requests that initiated the list of extras which he then failed to sign and return despite several requests from Condon. Except for minor items, all of the work in both the original contract and the written list of extras was performed by Condon and his subcontractors. No complaints were made until the work was completed and Condon requested the final payment. If Habetz had been informed of his right to cancel the contract it would never have been exercised. He wanted all the work under the original contract and the list of extras, and requested more additional work from Condon and from the masonry, electrical, plumbing and heating CT Page 7778 subcontractors. He tried to convince the electrical contractor to do electrical work which he misrepresented was covered by the contract. Habetz also tried to get Condon to move the hot tub onto the deck when that was not part of the plans. He now attempts to hold Condon responsible for cracks in the hot tub and problems with the deck resulting from the additional weight of the hot tub.
Since the defendant has proven bad faith on the part of Habetz, the minor noncompliance by the defendant with 20-429 (a) does not bar a recovery under the first and second counts of the counterclaim. Where a builder substantially performs work under a construction contract, the builder can recover the contract price less the amount required for correcting the builder's omissions and variations from the contract. Bruni v. Behnke, 144 Conn. 181, 182,183; M.J. Daly Sons, Inc. v. New Haven Hotel Co., 91 Conn. 280,287. While Condon substantially performed the contract, even if he had not done so, the balance of the contract price must be deducted from the owner's damages for breach of contract. Argentitis v. Gould, 219 Conn. 151, 157, 158. The defendant is entitled to recover the balance of the contract price of $10,000 under the first count of the counterclaim and the extras of $6,244 under the second count of the counterclaim less the cost of defective work.
The plaintiffs have claimed that the written contract has only been signed by Habetz and not by his wife, Mihalko. There was some evidence at the trial of personal involvement of Mihalko in the construction project even though she did not sign the contract. Most of the defendant's dealings were with Habetz, who acted as agent for Mihalko in construction of the addition, but these considerations are unessential to resolve this claim. Condon's counterclaim is only against Habetz, and does not include Mihalko. Moreover, the HIA does not expressly require all of the owners of the real estate where the improvement is made to sign the contract. Section 20-419 (6) defines "owner" as "a person who owns or resides in a private residence and includes any agent thereof." Section20-429 (a) states that a home improvement contract is not valid or enforceable against an owner unless it meets the requirements of the statute, which includes a signature by the owner. The clear implication of the statute is that a home improvement contract which meets all of the statutory requirements in 20-429 (a) is enforceable against any property owner or resident of a private residence or their agent who has signed the contract. The statute only precludes enforcement of an otherwise valid and enforceable contract against a co-owner or some other resident of the property who does not sign a contract meeting the statutory factors.
Habetz also claims that the written contract violates 42-135a
of the HSSA. That statute provides that "[n]o agreement of the buyer in a home solicitation sale shall be effective if it is not signed and dated by the buyer or if the seller shall" fail to take CT Page 7779 certain specified acts or engage in certain specified activities. While Condon was required by 20-429 (a)(6) in the HIA to have the home improvement contract contain a notice of the owner's cancellation rights in chapter 740, which would include the provisions in 42-135a, noncompliance with 20-429 (a) is not a violation of 42-135a. Section 42-135a standing alone is only a defense if the transaction here was a "home solicitation sale". Construction of an addition on a house is not a "home solicitation sale" which is defined in 42-134a(a) C.G.S. as "a sale, lease or rental of consumer goods or services." The relevant part of the definition of "consumer goods or services" is "goods or services purchased, leased or rented primarily for personal, family or household purposes." Section 42-134a(b) C.G.S. Construction of a residence or a major addition to it is not the purchase of goods or services. The work performed becomes part of the real estate, and unlike appliances and other personal property, is not easily subject to return to the contractor when the homeowner cancels the contract. The exclusions from the definition of home solicitation sale confirm that a major addition to a residence is not covered by the HSSA. These exclusions include a transaction "in which the buyer has initiated the contact and specifically requested the seller to visit his home for the purpose of repairing or performing maintenance upon the buyer's personal property," and the sale of real property. Section 42-134a(a)(4) and (5) C.G.S. Legislative intent not to include house construction under the HSSA is shown by the existence of a separate set of statutes for that purpose, the HIA.
The second count of the complaint incorporates the claims of negligence and breach of contract from the first count and alleges that the written agreement violates 20-429a of the General Statutes. The third count incorporates the second count, and alleges that the defendant's conduct is an unfair or deceptive act or practice in violation of 42-110b and 42-110g of the General Statutes, the Connecticut Unfair Trade Practices Act (CUTPA). Section 20-427 (b) provides in part that a violation of any of the provisions of the HIA "shall be deemed an unfair or deceptive trade practice under subsection (a) of 42-110b." The complaint does not request return of the $93,000 already paid to the defendant pursuant to the written contract. The right of a plaintiff to recover is limited to the allegations in the complaint. Lamb v. Burns, 202 Conn. 158, 172; Paulsen v. Manson, 203 Conn. 484, 492. No case has been identified where homeowners as plaintiffs can recover damages from a builder for noncompliance with 20-429 (a) which does not expressly provide for them. The dissenting opinion in Barrett Builders v. Miller, supra, 325, questioned whether homeowners can use 20-429 as a sword rather than a shield. The majority opinion recognized that a homeowner who has made progress payments has impliedly consented to the work performed. Id., 327n. As previously discussed, the conduct of the plaintiffs and allowing CT Page 7780 the defendant to complete the addition before questioning the enforceability of the contract because of the HIA amounted to bad faith which also precludes any claims based on 20-429 (a).
It is questionable whether the plaintiffs can maintain a CUTPA action based on the provision in 20-427 (b) that makes a violation of 20-429 (a) an unfair or deceptive trade practice where the bad faith of the owner bars reliance on the statute. Absent bad faith by the homeowner, the builder's failure to include a written notice of the homeowner's cancellation rights in the contract would be a per se violation of CUTPA because of 20-427 (b). A. Secondino 
Son, Inc. v. LoRicco, supra, 343.
Even if the conduct of the plaintiffs does not bar a CUTPA claim, in order to recover under CUTPA a plaintiff must show more than an unfair trade practice. Section 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." [The construction of an addition to the plaintiffs' house can be considered an activity amounting to trade or commerce as those terms are defined in 42-110a(4) C.G.S.] A civil action "to recover actual damages" is provided by 42-110g(a) of the General Statutes to "any person who suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by 42-110b" of the General Statutes. The plaintiffs have not proven by a preponderance of the evidence that they have sustained any monetary damages from the acts or omissions of the defendant other than the damages already awarded to them under the first count of the amended complaint, which combined claims of negligence for defective work and breach of contract for failure to complete the work in accordance with the written contract. (See complaint, paragraphs 3 and 5). In order to recover under CUTPA a plaintiff must show an ascertainable loss resulting from the unfair or deceptive act or practice of the defendant. Conaway v. Prestia,191 Conn. 484, 494; Hinchliffe v. American Motors Corporation,184 Conn. 607, 615; Gargano v. Heyman, 203 Conn. 616, 621. See also Bish Electric, Inc. v. Perez, 3 CSCR 929 (1988); A. A. McNamara 
Sons, Inc. v. Ramos, 2 CSCR 70 (1987). The failure of the defendant to give written notice of the right to cancel the contract made no difference here, as it is obvious from the conduct of the plaintiffs that they would not have cancelled it even if the notice provision was in the contract. The defendant's failure to give notice of cancellation rights did not result in any ascertainable loss or damage to the plaintiffs. None of their damages for the cost of corrective work resulted from the trivial and technical violation of the requirement for the builder to give notice of the right to cancel the contract within three business days. CT Page 7781
The claims of defective work and omissions also do not support a CUTPA claim. There can be no recovery under 42-110g for a garden variety negligence claim. A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 217. With the exception of the defective roof, none of the construction activities of the defendant were illegal or improper. The failure to use tarpaper as an underlayment when constructing the roof on the addition violated the Connecticut Building Code but the plaintiffs participated in that decision. Conduct is judged by considering whether (1) it caused substantial consumer injuries; (2) violated established public policy; and (3) was immoral or inscrupulous, but unjustified consumer injury is the most important consideration in determining whether a practice is unfair for purposes of the statute. Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 242, 243. "To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided." A-G Foods, Inc. v. Pepperidge Farm, Inc., supra, 216. A breach of contract, even if intentional, does not amount to a CUTPA violation unless there is proof of substantial aggravating circumstances attending the breach. Emlee Equipment Leasing Corporation v. Waterbury Transmission, Inc., 41 Conn. Sup. 575, 580. In some cases and under other circumstances construction of a house in violation of the Building Code could be an unfair or deceptive act or practice allowing CUTPA damages, but that is not the case here. When Condon informed the plaintiffs that there was no tarpaper under the existing roof, Habetz said to proceed with the roofing without tarpaper and asked for and received a credit from the contract price. The plaintiffs have not proven an unjustified consumer injury or any unconscionable conduct, which is the basis for a CUTPA recovery. Since the plaintiffs have not proven their CUTPA claim, they are not entitled to attorney's fees or punitive damages based on 42-110g of the General Statutes.
The evidence in this case does not support a claim for negligent infliction of emotional distress as alleged in the fourth count.
Judgment shall enter for the plaintiffs on the first count of the complaint for $16,542.50. Judgment shall enter for the defendant on the other counts of the complaint. Judgment shall also enter for the defendant against the plaintiff Habetz on the counterclaim in the amount of $16,244.
Robert A. Fuller, Judge.