[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
This is a contract dispute. The plaintiff alleges that the defendant, having contracted to pave the driveway of the plaintiff, failed to do so in a workmanlike manner as required by said contract.
The complaint is in two counts, the First Count alleging violation of contract and the Second Count alleging that the defendant's conduct constituted a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") General Statutes, §42-110a et seq.
II
CT Page 13356
On April 5, 1993 the plaintiff and the defendant, in the person of its owner, Andrew MacLellan, entered into an agreement whereby the defendant undertook to install an asphalt pavement on the driveway of the plaintiff's residence for the sum of One Thousand Eight Hundred Twenty-Five dollars ($1,825.00), payable upon completion. By terms of this contract the defendant was to regrade the existing driveway, install certain curtain drains, bring the entire driveway to grade, then pave with 2 1/2 inches of asphalt. The contract required, inter alia, that "all work will be completed in a workmanlike manner according to standard practices." The contract terms included: "Guaranteed 2 years."
The defendant completed his work by the end of April, 1993. Although there was no evidence offered to prove that the plaintiff paid the defendant the contract amount, the court infers from the defendant's testimony that the plaintiff did indeed pay the defendant the agreed-upon sum upon completion.
In May, 1993 the plaintiff complained to MacLellan about irregularities in the texture of the pavement and the appearance of tire marks in the asphalt. MacLellan visited the site, expressed his opinion that something was wrong with the material supplied him by Tilcon and offered to replace the driveway. (Transcript, p. 101).
By letter dated December 10, 1993 (Plaintiff's Exhibit "D") MacLellan indicated that Tilcon had concluded that the paving did not need to be replaced. Nonetheless, MacLellan stated in said letter, "I will replace the driveway before June 1, 1994." This was never done.
The court notes that the plaintiff's complaint regarding irregularities in the texture appears to arise from aesthetic concerns. There was no evidence that any such irregularities impeded the plaintiff's use of the driveway.
The tire marks complained of appear to have made in two isolated instances within weeks of the pavement's installation and there was no evidence introduced to show that this condition persisted, nor that such defect prevented the plaintiff's use of the driveway.
It should be noted that these were the only defects claimed by the plaintiff prior to the end of 1993. The defendant's offer in May and again in December, 1993 to replace must be viewed in CT Page 13357 that context.
The plaintiff also complained that, beginning in the winter of 1993-94 the pavement adjacent to the garage entrance lifted or "heaved," raising that area of the pavement and causing water to collect on the driveway and to run into the garage.
There was sharp disagreement over the cause of this problem. The plaintiff attributed the problem to the removal by the defendant of a pre-existing drain pipe. The defendant insisted that the said pipe or its absence had nothing to do with the problem, which was caused by insufficient drainage in the base underlying the driveway, for which the defendant bore no responsibility.
The agreement between the parties does not require the defendant to install or repair the base under the driveway. Such work would be beyond the scope of said agreement. The court finds that the plaintiff has failed to establish, by a fair preponderance of the evidence that the problem of lifting or "heaving" of the pavement and the runoff of water into the garage, was caused by an act or omission of the defendant.
It may be noted that offers by the defendant to repave the driveway predated the discovery of the lifting and water problem. There is no reason to believe that had the defendant repaved the driveway, this problem would have been resolved.
At the time of trial the plaintiff raised additional claims of defects, testifying that the asphalt along this edge of the pavement had deteriorated (See Plaintiff's Exhibit "C") and that cracks had appeared in the asphalt (See Plaintiff's Exhibit "B"). The plaintiff was unable to establish with any degree of precision the time when either of these defects was first discovered. There was no evidence introduced to show that either of these conditions interfered with the plaintiff's use of the driveway. The court finds that the plaintiff has failed to establish, by a fair preponderance of the evidence, that the deterioration of the driveway's edging or the cracks in the asphalt were caused by the defendant's failure to complete its work in a workmanlike manner.
What remains of the plaintiff's claims are the irregularities in the texture of the pavement and the tire marks as initially complained of. In response to the plaintiff's initial complaint CT Page 13358 the defendant indicated he thought something was wrong with the material (Transcript, p. 101). The court construes the defendant's repeated offers to repave the driveway as an acknowledgment by the defendant that it had not completed its work in a workmanlike manner according to standard practice. The court finds that the plaintiff has established, by a fair preponderance of the evidence that the defendant has violated the agreement between the parties by its failure to complete the work contracted for in a workmanlike manner.
 III
The plaintiff's Second Count alleges that the defendant's conduct constitutes a violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), General Statutes, 42-110a et. seq.
General Statutes § 42-110b provides in pertinent part, that "No person shall engage in . . . unfair or deceptive acts or practices in the conduct of any trade or commerce."
CUTPA is a remedial statute, to be construed liberally in an effort to effectuate its public policy goals, General Statutes § 42-110b(d), Hartford Fire Insurance Company v. Brown,164 Conn. 497, 503, 325 A.2d 228 (1973).
But, not every dispute over the value of goods and service supports a claim for statutory recovery under CUTPA, Ivey, Barnumand O'Mara v. Indian Harbor Properties, Inc., 190 Conn. 528, 532. Not every consumer injury is legally "unfair," A-G. Foods, Inc.v. Pepperidge Farm, Inc., 216 Conn. 200, 216 (1990).
Generally, a simple breach of contract does not suffice to establish a violation of CUTPA, Emlee Equipment LeasingCorporation v. Waterbury Transmission, Inc., 41 Conn. Sup. 575,580; A. Secondino Sons, Inc. v. L.D. Land Company,13 Conn. L. Rptr. No. 7, 233 (February 13, 1995). A plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act, Bartolomeo v. S.B. Thomas, Inc.,889 F.2d 530, 535 (4th Cir. 1989).
The court finds that the plaintiff has failed to establish, by a fair preponderance of the evidence, that the acts of the defendant were "immoral, oppressive and unscrupulous" as alleged. The plaintiff's Second Count, accordingly, is dismissed. CT Page 13359
 IV
The plaintiff has established, by a fair preponderance of the evidence that the defendant breached its contract with the plaintiff by failing to complete its work in a workmanlike manner. Because the plaintiff produced no witness competent to testify as to the replacement cost of installing a new pavement, recovery is limited to the contract price.
Accordingly, judgment may enter in favor of the plaintiff in the amount of One Thousand Eight Hundred Twenty-Five ($1,825.00) dollars.
Downey, J.