[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Although J. P. Morgan is popularly believed to have said, on the subject of how much it costs to own a yacht, "If you have to ask you can't afford it," what he actually said was, "If it makes the slightest difference to you what it costs, don't try it." JEAN STROUSE, MORGAN 206 (1999). Mark Urich and Richard Fish, the parties in this case, have conspicuously ignored this advice. Urich sold a yacht to Fish in 1993, and the two have litigated the financial aspects of the matter up and down the judicial ladder ever since.
Urich sued Fish in 1994, alleging an unpaid balance on the purchase price, and Fish counterclaimed, contending that Urich had removed certain items from the yacht prior to delivery. In 1998, the case was tried to the court (DeMayo, J.T.R.). The court entered judgment for the plaintiff on the complaint and for the defendant on the counterclaim. Both parties appealed. The Appellate Court affirmed the judgment on the complaint, but reversed the judgment on the counterclaim because of an evidentiary CT Page 14541 ruling and remanded that matter for a new trial. Urich v. Fish,58 Conn. App. 176, 753 A.2d 372 (2000). The matter was subsequently retried to the court on October 31 and November 1, 2000. Posttrial briefs were submitted on November 15, 2000.
The decision of the Appellate Court significantly limits the scope of the retrial. Only the Second and Third Counts of the Counterclaim are now before the court. The Second Count alleges that a number of items that should have been included in the sale of the yacht were missing. The Third Count alleges that the removal of these items was an unfair act in violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110b. These counts will be considered in turn.
The Second Count turns almost entirely on credibility. Fish contends that, when the yacht was delivered to him, a number of items, intended to be part of the sale, had been stripped from the vessel. Urich claims that, with a few minor exceptions, the items in question never even existed. Each party has produced a corroborating witness (in Fish's case, his daughter; in Urich's case, his self described "companion") to back his respective version of events. Given the specificity of Fish's testimony and of Urich's denials, it is not possible that both sides are telling the truth. Perhaps the one thing they could both agree on is that one of them is lying. Each of them, of course, is perfectly aware of who that party is. Unhappily, the certitude of that knowledge must remain with the parties. The task of the court is to decide the matter based on the preponderance of the evidence.
After a full consideration of the evidence, I find Fish and his supporting witness credible, and I find Urich and his supporting witness to be not credible. These findings rest primarily on the demeanor of the respective witnesses, but the documentary evidence contains an important clue. Fish testified that, when he saw the yacht in drydock prior to the sale, it had a large anchor and that, when the yacht was delivered, a much smaller anchor had been substituted. Urich testified that the yacht had the same anchor on both occasions. Immediately prior to delivery, Urich had the yacht serviced at Ocean Yachts, Inc. in New Jersey. An Ocean Yachts invoice in evidence, dated June 10, 1993, states "Install Owners Anchor" at "N/C" (i.e. no charge). This invoice clearly documents the fact that the yacht's anchor was indeed changed immediately prior to delivery. When confronted with this document in cross-examination, Urich could not adequately explain it. Considering this evidence together with the other evidence in the case, I conclude that Fish and his corroborating witness are credible and that Urich and his corroborating witness are not credible.
Based on all the evidence in the case, I find that the following items CT Page 14542 that should have been included in the sale of the yacht were missing when the yacht was delivered to Fish. The dollar value of the items in question, supported by the credible evidence, is also stated.
MISSING ITEMS VALUE
6 sets of custom sheets and towels 865.72 Bow cushion and cover 1,255.04 Toaster oven and coffee maker 63.52 Anchor 346.74 Hoses, lines, and 2 boat hooks 227.26 Life jackets and ring buoy 523.16 Anchor and mast lights (including labor) 589.91 Single side band radio 5,530.02 2 fenders 50.86 2 portable spotlights 100.68 Flare kit 125.07 Automatic battery charger 148.39 Solar mini charger 26.49 Bait freezer 573.39 Hi-low coffee table 3,710.00 Barrel chair 1,590.00 Light fixture 230.00 3 custom soap dispensers 190.80 Horn 285.00 Propane tank 38.00 Remote spotlight 354.99 Custom steering wheel 200.00
The total value of the missing items is $17,025.04.
The Third Count of the counterclaim presents a CUTPA question. Did Urich's removal of the items in question prior to delivery of the yacht constitute a CUTPA violation? The answer to this question is in the affirmative. Urich's action here is a prime example of the conduct which CUTPA seeks to remedy. "Some of the oldest `unfairness' decisions involve sellers' refusals to live up to the terms of their contract." Lester v.Resort Camplands International, Inc., 27 Conn. App. 59, 72, 605 A.2d 550
(1992). (Some internal quotation marks and citation omitted.) While not every breach of contract is a CUTPA violation; see Emlee EquipmentLeasing Corp. v. Waterbury Transmission, Inc., 41 Conn. Sup. 575, 580,595 A.2d 951 (1991); there is a vast difference between the inadvertent delivery of a product not conforming to contract specifications or the breaking of an unprofitable deal, on the one hand, and the defrauding of a consumer, on the other. See Boulevard Associates v. Sovereign Hotels,Inc., 72 F.3d 1029, 1039 n. 5 (2d Cir. 1995). The conduct at issue here is akin to the conduct held to be a CUTPA violation in Lester. In that CT Page 14543 case, a campground had sold memberships, claiming that various facilities and amenities existed when they did not, in fact, exist. Such conduct is a variation of a classic switch" technique, whereby a consumer is promised (and pays for) one thing, and is given quite another. See, e.g.,National Trade Publications Service, Inc. v. Federal Trade Commission,300 F.2d 790 (8th Cir. 1962) (publication service substitutes other magazines for those to which the customer has subscribed); Slaney v.Westwood Auto, Inc., 322 N.E.2d 768, 778 (Mass. 1975) (automobile seller promises to make various repairs that are not in fact made). Urich's acts here, like the sellers' acts in the cases just cited, were unfair acts in violation of CUTPA.
When a CUTPA violation is found, as it has been here, the Court may, in its discretion, award punitive damages and costs and reasonable attorneys' fees. Conn. Gen. Stat. § 42-110g(a) (d). The parties have requested a further evidentiary hearing on the questions of whether such awards should be given and, if so, what the amount of those awards should be. The clerk will schedule such a hearing after consultation with counsel representing both parties.
No judgment shall enter on either count until after the further hearing has been held.
Jon C. Blue Judge of the Superior Court