[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Moulton Brothers, Inc., seeks to foreclose a mechanic's lien levied against real property owned by the defendants, John and Alyson Lemieux, and located at 69 Gilbert Road, Stafford Springs. The defendants counterclaim seeking a discharge of the lien and monetary damages for a violation of the Home Solicitation Sales Act (HSSA), General Statutes § 42-134a ff; misrepresentation; and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes CT Page 16480 § 42-110a ff. On November 28, 29, and 30, 2001, a trial to the court was held. The second count of the counterclaim alleging a violation of HSSA was dismissed during trial. As to the remaining issues, the court finds the following facts.
In June 1997, the defendants wished to have a new residence built at the above location. They approached Leslie Moulton, who was and is the owner, president, and manager of the plaintiff, a corporation. The defendants provided to Moulton a copy of a floor plan which they had reproduced from a magazine. Moulton expressed interest in constructing the home for the defendants.
Moulton had received four years of training in architectural drafting while attending a technical high school. He also worked for a residential home construction company for two years and was promoted to head of that business's drafting department. For the past thirty years, Moulton has been affiliated with the plaintiff in its home building business.
Using the floor plan supplied by the defendants, Moulton, on June 18, 1997, completed a five page draft of preliminary plans for the defendants. The parties exchanged proposals and counter proposals. At one point, the defendants wanted to perform the electrical and septic work themselves. Later, it was agreed that the plaintiff would do all construction except excavation and grading.
On or about April 28, 1998, the parties finally agreed that the plaintiff would erect the home in accordance with the specifications and blue prints prepared by Moulton for a sales price of $162,752. The written contract called for installment payments which became due as construction progressed. Because the defendants procured financing through a lender, however, payments were made only as funds became available at the lender's pace rather than in response to billing by the plaintiff. Ceramic tile floors and certain upgraded electrical features were added during construction and constituted extras.
During construction disputes arose concerning the quality of the work and whether that work met the contract specifications. Eventually, the defendants' withheld substantial payments until these differences could be resolved. Despite these disputes, and the incomplete state of construction, the defendants' moved into the house on September 21, 1998. The plaintiff continued to work on the house in September and October 1998, after the defendants began residing there.
On October 24, 1998, lengthy discussion and negotiation produced a second accord among the parties. They orally agreed to certain credits, deductions, and additional charges and that the defendants would pay, on CT Page 16481 that date, $54,075 in satisfaction of the work done by the plaintiff up to that point. That sum was fully paid on that date. It was further agreed that when the plaintiff satisfactorily addressed all the deficiencies on a written "punch list," comprising twenty-eight items, the defendants would pay another $14,700 to the plaintiff.
In the days following this agreement, Moulton rectified around ten of the twenty-eight deficiencies. Moulton requested that John Lemieux sign off on the punch list as each item was addressed, but Lemieux was unwilling to engage in piecemeal confirmation of the work. An argument ensued, and, on October 28, 1998, Moulton stormed off the premises. The plaintiff did no further work on the site. The defendants have never paid any of the additional $14,700.
On November 30, 1998, the plaintiff filed a mechanic's lien certificate on the Stafford land records, which certificate was served on the defendants on December 1, 1998. On April 28, 1999, the present action was begun to foreclose on that lien. On November 2, 1999, a lis pendens pertaining to this action was filed on the Stafford land records. A copy of the lis pendens was never served on the defendants, but they had actual knowledge of the action and filed an appearance in August 1999. See First Constitution Bank v. Harbor Village Ltd, 37 Conn. App. 698, 702
(1995).
 I
The court first addresses the plaintiff's foreclosure claim. The second agreement of the parties, reached on October 24, 1998, modified the terms of the earlier contract, dated April 28, 1998, and attempted to resolve disputes which arose during construction. Under this new, partly oral and partly written agreement, the defendants owed the plaintiff no money beyond that which they had already paid, including the $54,075 remitted on the date of the new agreement, unless and until the "completion/sign off of punch list." While the plaintiff did remedy some punch list deficiencies, the bulk of the items remained uncorrected. The plaintiff has failed to prove, by a preponderance of the evidence, that the defendants' owe it any additional payment because the punch list items were not completely remedied. Consequently, the court concludes that judgment must be rendered for the defendants on the foreclosure action.
 II
Turning to the counterclaim, the first count seeks discharge of the mechanic's lien. Based on the findings and conclusions noted in Section I of this Memorandum, the mechanic's lien is discharged. CT Page 16482
 III
The third and fourth counts of the counterclaim are based on essentially the same factual allegations, i.e. that Leslie Moulton, by accepting the project to construct the defendants' new house and drafting plans for it, engaged in intentional or negligent misrepresentation and that such conduct constitutes a CUTPA violation. The court disagrees. It should be noted, also, that the counterclaim contains no count of breach of contract.
In order for the defendants to prevail on a claim of fraudulent misrepresentation, they must prove, by clear and convincing evidence (1) that Moulton as an agent of the plaintiff, made a false misrepresentation of fact, (2) that he knew the representation was false, (3) that he made the representation to induce the defendants to enter the construction contract with the plaintiff, and (4) that the defendants acted upon the false representation to their detriment, Statewide Grievance Committeev. Egbarin, 61 Conn. App. 445, 454 (2001).
The court discerns no false representation made by Moulton to the defendant. Paragraph four of the third count alleges that Moulton "represented that [the plaintiff] was equipped and prepared to do all design and drafting associated therewith appropriate to provide adequate specifications for a house to be built." No credible evidence was adduced that Moulton explicitly made such a representation. The defendants argue that by agreeing to do the work and drafting plans, Moulton implied that he was competent to perform such work.
Moulton never claimed to be an engineer or architect. He was trained and experienced in architectural drafting. The fact that the house may have been designed and built below the standards the defendants expected or in an unworkmanlike manner fails to prove, by clear and convincing evidence, that misrepresentation occurred. To hold otherwise would convert every breach of contract for substandard performance into a misrepresentation claim. The court concludes that no misrepresentation took place in this case.
As to negligent misrepresentation, the defendants must prove, by a preponderance of the evidence, (1) that Moulton made a false representation of fact as to his qualifications; (2) that he failed to exercise reasonable care in obtaining or communicating the false information; (3) that Moulton made the false representation to induce the defendants to engage the plaintiff to design and build their house; and (4) that the defendant's justifiably relied on the representation to their detriment, D'Ulisse-Cupo v. Board of Directors, 202 Conn. 206, 219
(1987); Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 579
CT Page 16483 (1995).
As noted above, the court has found that Moulton never made any false representation regarding his qualifications to design and build the house. The defendants cannot prevail on the misrepresentation claim contained in the third count of the counterclaim.
Because this purported misrepresentation is also the foundation of the CUTPA violation asserted in the fourth count, the defendants have failed to meet their burden on that count, also. One cannot bootstrap a CUTPA claim from every breach of contract. Failing to meet a workmanship standard, alone, is insufficient to establish an unfair trade practice,Emlee Equipment Leasing v. Waterbury Transmission, 41 Conn. Sup. 575
(1991); Biondi v. Ste. Lacar Holding, Inc., Superior Court, Tolland J.D., d.n. CV 94-56419 (February 16, 1995), Sferrazza, J.
In summary, the court decides for the defendants on the plaintiff's foreclosure complaint; for the defendants on the discharge of mechanic's lien count; and for the plaintiff on the third and fourth counts of the counterclaim.
Sferrazza, J.