[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT MICHAEL J. PARRELLA'S MOTION TO STRIKE (#145)
This litigation arose out of the lease of approximately 100 sophisticated computer-controlled audio systems by the plaintiff Production Resources Group, LLC (PRG) to the defendants NCT Group, Inc. (NCT) and Distributed Media Corporation (DMC). The audio systems were intended to provide audio to a single zone in a retail establishment, such as a book store or department store. PRG purchased the components of the systems, and supervised their installation into a variety of retail establishments for the benefit of DMC and NCT. NCT and DMC leased the systems from PRG for a monthly fee.
The original agreements between the parties provided a purchase option. To facilitate the purchase and installation of the equipment, NCT and DMC borrowed $875,000 from PRG pursuant to a 10% convertible guaranteed term promissory note (the note), which note was unconditionally guaranteed by NCT. As additional consideration, PRG received a common stock warrant entitling it to purchase 6.67 million shares of NCT common stock (the warrant). The note, lease and warrant were executed by NCT and/or DMC representatives in July 1999, and thereafter, PRG caused the leased equipment to be delivered and installed.
It is alleged that the note initially functioned as a line of credit from PRG. Once the money under the note was exhausted, NCT exercised its option to purchase the equipment and thereby terminate its obligation to pay rent under the lease. Following negotiations, the parties agreed to modify the terms of the warrant to provide terms under which NCT would pay PRG. These additional agreements were memorialized in a January 2001, resolution agreement. Included in the resolution agreement was NCT's acknowledgment that PRG was owed approximately $2 million for lease payments, loans, services and purchase of the equipment. No obligations CT Page 2634 pursuant to the resolution have been paid.
Regarding a meeting held on April 26, 2001, with all parties present, including the defendant Michael J. Parrella (Parrella), Chief Executive Officer of NCT and Chairman of the Board of Directors of both NCT and DMC, the complaint alleges as follows:
20. Defendant Parrella was present at this meeting and represented to plaintiff that defendants intended to make payment, and that NCT would cause its wholly owned subsidiary, NCT Audio Products, Inc., to liquidate all or a portion of its 2 million shares in NXT plc [a UK corporation] to pay plaintiff the balance due and owing therein.
21. At all times, Parella represented that NCT had the right to liquidate the NXT shares owned by NCT Audio Products and that the value of these shares was more than sufficient to satisfy the debts to plaintiff. The only limitation on the sale of the NXT shares, according to Parrella, was that the NXT shares could not be sold in a single block but rather had to be sold off over a period of a few weeks in parts so as to avoid an adverse impact on the market value of these shares. Parrella discussed at length the amount of time it would take to liquidate the stock and the need for him to get further advice from Merrill Lynch in this regard.
Amended Complaint, ¶¶ 20 and 21.
Backed by these representations, the parties entered into an agreement dated May 11, 2001, obligating NCT to make payments totaling in excess of $1.8 million by June 30, 2001, by means of the sale of the NXT stock. The defendants made the first payment due in the amount of $103,040, but did not make any other payments required under the May 2001, agreement.
In December 2001, NCT and DMC accepted PRG's offer of judgment for $2 million. Judgment entered against the corporate defendants, but that judgment remains substantially unpaid. On January 2, 2002, PRG amended its complaint to allege causes of action against Parrella personally.
The first count of the amended complaint alleges against Parella a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b et. seq. The second count asserts a claim based on fraud, and the third count alleges a breach of the duty of good faith and fair dealing. Parrella has moved to strike all three counts of the amended complaint.
"The purpose of a motion to strike is to contest . . . the legal CT Page 2635 sufficiency of the allegations of the complaint . . . to state a claim upon which relief can be granted . . ." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270, 709 A.2d 558 (1998). "A motion to strike admits all facts well pleaded." Parsons v. United Technology Corp. , 243 Conn. 66,68, 700 A.2d 655 (1997). "In deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the complaint . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.)Liljedahl Brothers, Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 148
(1990). "[A motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings . . ." (Citations omitted; emphasis omitted.) Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.)Faulkner v. United Technologies Corp. , 240 Conn. 576, 580, 693 A.2d 293
(1997). "Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied . . ." (Citation omitted; internal quotation marks omitted.) Gazo v. Stamford, 255 Conn. 245, 260,765 A.2d 245 (2001). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted.) Novametrix Medical Systems v. BOCGroup, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992).
 I. Claim Under The Connecticut Unfair Trade Practices Act
CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). A plaintiff who establishes a violation of CUTPA may recover not only actual damages, but in some cases attorneys fees and punitive damages as well. See General Statutes §§ 42-110g (a) and (d). In enacting CUTPA, the legislature intended to create an expansive act which would provide relief to persons suffering "any ascertainable loss" as a result of an unfair or deceptive trade practice. General Statutes § 42-110g (a). To that end, the legislature expressly provided that "[i]t is the intention of the legislature that this chapter be remedial and be so construed." General Statutes § 42-110b (d) "In determining whether certain acts constitute a violation of [CUTPA], [the Connecticut Supreme Court has] adopted the criteria set out in the cigarette rule by the federal trade commission . . . (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of CT Page 2636 unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers . . ." (Citations omitted; internal quotation marks omitted.) Williams Ford,Inc. v. Hartford Courant Co., 232 Conn. 559, 591, 657 A.2d 212 (1995). Parrella argues that the first count must be stricken because (1) PRG failed to allege that Parrella engaged in a deceptive act or practice in violation of public policy, and (2) PRG failed to plead facts necessary to show that it sustained an actual ascertainable loss as required by CUTPA.
The amended complaint does allege that Parrella represented that NCT had authority to liquidate and would liquidate some portion of its shares of NXT to pay PRG the funds owed under the May 2001, agreement. It is further alleged that Parrella knew that this was an untrue statement because NCT did not have the authority to liquidate NXT shares without the approval of NCT Audio Products, Inc. PRG also alleges that it sustained an ascertainable loss, because it would have sought legal recourse at an earlier date, when corporate assets of the corporate defendants were available.
Parrella characterizes PRG's claim in the first count as a mere breach of contract action against DMC and NCT, arguing that the first count does not allege any substantial aggravating circumstances attributable to Parrella and required by CUTPA.
The issue of whether a contract action may be deemed a CUTPA claim has been discussed extensively by Judge Corradino in both Designs on Stone,Inc. v. John Brennan Construction Co., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 059997 April 9, 1998) (21 Conn.L.Rptr. 659), and Kastania, Inc. v. Monro Muffler Brake, Superior Court, judicial district of New London at New London, Docket No. 562573 (Sept. 20, 2002) (33 Conn.L.Rptr. 149), holding in pertinent part that:
The burdens and risks inherent in contract formation would be intolerably increased if every simple breach of contract claim were to be made the basis of a CUTPA violation. But it is also true that the same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation. Lester v. Resort Campgrounds International,Inc., 27 Conn. App. 59, 71, [605 A.2d 550] (1992). In other words, a breach of contract claim can make out a legally sufficient CUTPA claim as long as there are "substantial aggravating circumstances." Cf. EmleeEquip. Leasing Corp. v. Waterbury Transmission, Inc., 41 Conn. Sup. 575, [595 A.2d 575], 3 Conn.L.Rptr. 711 (1991) [(Blue, J.)].
Kastania, Inc. v. Monro Muffler Brake, supra, Superior Court, Docket CT Page 2637 No. 562573.
In this case, however, PRG has alleged a pattern of misrepresentation that induced PRG to further contract with the corporate defendants and delay litigation, all of which actions potentially constitute unfair business practices in violation of public policy. The allegations contained in paragraphs 20 and 21 of the amended complaint, reciting representations by Parrella, take this case, and specifically the first count, out of the realm of a simple breach of contract dispute. Instead, the court finds that the first count claims damages as a result of fraudulent misrepresentations to induce a party to defer enforcement of its contractual rights. When it is alleged that such misrepresentations resulted in the loss of an opportunity to recover against corporate assets, such alleged conduct is sufficient to state a claim under CUTPA. The alleged delay occasioned by such alleged misrepresentations by Parrella also is sufficient to articulate a substantial ascertainable injury. The motion to strike the first count is denied.
 II. Fraud Claim
Parrella argues that the second count of the amended complaint must be stricken because it fails to plead the elements of fraud specifically, fails to allege facts necessary to satisfy the essential elements of a fraud claim, and instead relies upon conclusory allegations. According to the allegations in the second count, Parrella represented that NCT had the authority to cause NCT Audio Products, Inc., to sell shares of NXT, that NCT Audio Products, Inc. had the right to sell the NXT shares, and that the shares of NXT would be used to pay the plaintiff in accordance with the May 2001, agreement. The complaint further explains that Parrella knew these statements were untrue at the time he made them because he knew that the shares were owned separately by NCT Audio Products, Inc., and were subject to a lock-up agreement which prohibited their sale.
A fraud claim must include the following elements: 1) a false representation made as a statement of fact; 2) that the statement was untrue and known to be untrue by the party making it; 3) that it was made to induce the other party to act upon it; and 4) that the other party did act upon the false representation and was injured. Suffield DevelopmentAssociates Ltd. Partnership v. National Loan Investors, L.P.,260 Conn. 766, 777, 802 A.2d 44 (2002); Weisman v. Kaspar, 232 Conn. 531,539, 661 A.2d 530 (1995). The above recitation of the allegations contained in the second count demonstrates that all four elements have been sufficiently alleged. The second count survives this motion to strike. CT Page 2638
 III. Breach of Good Faith and Fair Dealing
Parrella claims that the third count of the amended complaint must be stricken because Parrella was not a party to the contract in question and is not alleged to have owed any contractual duty to PRG. The existence of a contract between the parties is a necessary antecedent to any claim relating to a breach of duty of good faith and fair dealing. Hoskins v.Titan Value Equities Group Inc., et al, 252 Conn. 789, 793, 749 A.2d 1144
(2000).
The allegations of the third count do not support the conclusion that Parrella was a party to a contract with PRG. PRG argues that the third count, specifically paragraphs 20 and 21, alleges that Parrella entered into oral and implied agreements with PRG at the April 26, 2001, meeting. Those paragraphs do not contain facts establishing either an oral or implied contract. The motion to strike the third count is granted.
Conclusion
The motion to strike (#145) is denied as to the first and second counts and granted as to the third count.
ROBERT F. McWEENY, J. CT Page 2639