DONNA ANASTASIA *v.* BEAUTIFUL YOU HAIR DESIGNS, INC., ET AL.
(AC 19052)

Foti, Pellegrino and Peters, Js.

Argued September 26, 2000—officially released January 23, 2001

*James D. Diamond*, for the appellants-appellees (defendants).

*Andrew B. Nevas*, for the appellee-appellant (plaintiff).

*Opinion*

PELLEGRINO, J. The defendants[1] appeal and the plaintiff, Donna Anastasia, cross appeals from the judgment of the trial court adopting the findings and recommendations in the report of an attorney trial referee. The defendants claim that the court improperly accepted the findings and recommendations of the referee because the plaintiff failed to prove her claim of fraud in the inducement of a contract. The plaintiff challenges the calculation of damages. We affirm the judgment of the trial court.

The record discloses the following facts and procedural history. The plaintiff purchased a hair salon from the defendant Deborah Lacerenza in July, 1994. Shortly thereafter, in January, 1995, the plaintiff commenced an action against the defendants, claiming that they had fraudulently misrepresented the value of the salon during negotiations leading to the consummation of the sale, and sought damages and rescission of the contract

---

[1] Deborah Lacerenza, Charles Raymond and Beautiful You Hair Designs, Inc., are the defendants. Lacerenza owned and managed the hair salon at issue in this appeal prior to its sale to the plaintiff, Donna Anastasia. Raymond is Lacerenza's husband. Lacerenza formed the corporation to manage the assets of the salon and was the corporation's president. The record is silent as to the ownership of the corporation.

of sale. The matter was referred to an attorney trial referee pursuant to Practice Book (1998) § 19-2.[2] After a hearing, the referee, in a report[3] dated June 22, 1998, made factual findings in favor of the plaintiff and recommended that the court award her damages in the amount of $20,200.

On July 2, 1998, the plaintiff timely filed a motion to correct the findings in the report,[4] which the referee denied without comment on July 24, 1998. On July 31, 1998, the plaintiff timely filed exceptions to the findings in the report[5] and, on August 7, 1998, she timely filed an objection to the acceptance of the report.[6] The plaintiff's

---

[2] Practice Book (1998) § 19-2, now § 19-2A, provides in relevant part: "The court or any judge thereof may send to [an attorney trial referee] for a finding of facts any case wherein the parties are not, as a matter of right, entitled to a trial by jury. . . ."

[3] Practice Book § 19-4 provides in relevant part: "An attorney trial referee to whom a case has been referred shall file a report with the clerk of the court . . . within one hundred and twenty days of the completion of the trial before such referee."

Practice Book § 19-8 provides in relevant part: "(a) The report of . . . [an] attorney trial referee shall state . . . the facts found and the conclusions drawn therefrom. It should not contain statements of evidence or excerpts from the evidence. The report should ordinarily state only the ultimate facts found . . . .

"(b) The . . . [an] attorney trial referee may accompany the report with a memorandum of decision including such matters as it may deem helpful in the decision of the case . . . ."

[4] Practice Book (1998) § 19-12 provides in relevant part: "If either party desires to have the report or the finding corrected by striking out any of the facts found, or by adding further facts, or by stating the claims of the parties made before the [attorney trial referee], or by setting forth rulings upon evidence or other rulings of the [attorney trial referee], such party shall within two weeks after the filing of the report or finding file with the court a motion to correct setting forth the changes and additions that are desired. . . ."

[5] Practice Book (1998) § 19-13 provides in relevant part: "If [an attorney trial referee] fails to correct a report or finding in compliance with a motion to correct, the moving party may, within ten days after the decision on the motion to correct, file exceptions seeking corrections by the court in the report or finding. . . ."

[6] Practice Book § 19-14 provides in relevant part: "A party may file objections to the acceptance of a report on the ground that conclusions of fact

proposed corrections and her exceptions and objections largely concerned the referee's findings and recommendations regarding her damages.

On September 3, 1998, the defendants filed motions objecting both to the acceptance of the report and to judgment on the report,[7] including the recommendation of the award of damages. Additionally, they challenged the referee's failure to make separate findings as to each defendant, his finding of fraud and certain evidentiary rulings. On October 21, 1998, the court overruled all objections and exceptions of both parties, and rendered judgment in accordance with the findings and recommendations in the report of the referee.[8] The court did not issue a memorandum of decision, and none of the parties sought articulation of the court's analysis as to the exceptions, objections or acceptance of the referee's findings and recommendations. This appeal followed.

I

The defendants claim that the court improperly accepted the findings and recommendations of the referee because the plaintiff did not prove that the defendants acted fraudulently. We disagree.

---

stated in it were not properly reached on the basis of the subordinate facts found, or that the . . . attorney trial referee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted. . . ."

[7] The court rendered judgment on the report pursuant to Practice Book (1998) § 19-16, which provides in relevant part: "If exceptions or objections have been seasonably filed, the case should be claimed for the short calendar for hearing thereon; and the court may, upon its decision as to them, forthwith direct judgment to be rendered."

[8] Practice Book § 19-17 (a) provides in relevant part: "The court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report . . . ."

The standard of review in cases referred to referees is well settled. "Attorney trial referees are empowered to hear and decide issues of fact. . . . It is axiomatic that a reviewing authority may not substitute its findings for those of the trier of the facts. . . . The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee. . . . Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the [attorney trial] referee." (Citations omitted; internal quotation marks omitted.) *Villano* v. *Polimeni*, 54 Conn. App. 744, 747–48, 737 A.2d 950, cert. denied, 251 Conn. 908, 739 A.2d 264 (1999).

Some additional facts are necessary for our resolution of this issue. The referee found the following to have occurred. In May, 1994, the plaintiff answered a newspaper advertisement in which Lacerenza offered her salon for sale. The plaintiff, a mother of four young children, was in the process of being divorced and was interested in purchasing a business that would generate enough income to support her family. The plaintiff had not worked for several years, had no business experience and had never worked as or trained to be a hairdresser. During the course of negotiations, the plaintiff shared that information with Lacerenza.

While the plaintiff and Lacerenza were reaching agreement on a purchase price for the salon, Lacerenza made a number of representations relating to the business. She told the plaintiff that weekly sales receipts for the salon averaged $2500 and that, after deducting corresponding expenses, the plaintiff could expect a weekly salary of about $900. Lacerenza presented the plaintiff with a brief written statement itemizing receipts and expenses, and repeating the figures that she had relayed orally. Lacerenza also claimed that the

salon had a client base of at least 2000, that it was a "signature salon,"[9] that it could support two full-time manicurists with existing demand and that its utility expenses were approximately $150 per month. She assured the plaintiff that the salon's monthly rental payments were covered by product sales. Further, Lacerenza told the plaintiff that the salon's assets included a tanning bed that had not been advertised to customers but that, given proper promotion, would provide a significant source of additional income. When the plaintiff asked Lacerenza if she could see the salon's records and tax returns to verify the accuracy of what she was being told, Lacerenza claimed that they were unavailable and that, in any event, they did not reflect matters truthfully since the salon was largely a "cash business" that did not report all of its income to the state and federal tax authorities.

On the basis of those discussions, the parties agreed on a purchase price of $68,000 for the salon. Lacerenza insisted that the plaintiff pay her $23,200 in cash prior to the closing on the sale. The contract subsequently drafted by Lacerenza's attorney reflected only the balance of $44,800 as the total purchase price. To raise the necessary funds for the purchase, the plaintiff borrowed $65,000 from her relatives. She executed a promissory note to Lacerenza for the balance. At the July 1, 1994 closing, the defendant Charles Raymond assured the plaintiff's aunt, who had lent the plaintiff $60,000, that she need not worry about having her loan repaid because the salon's business and income were such that she would be reimbursed within a year.[10]

---

[9] A "signature salon" is one to which callers of a telephone hotline number, listed in women's magazines, will be referred.

[10] The plaintiff testified that she also had spoken at length with Raymond on the telephone when she made the initial call expressing interest in purchasing the salon. He told her that the salon "threw off about $75,000" annually, which prompted the plaintiff to make further inquiries with Lacerenza.

Upon assuming control of the business, the plaintiff found that the salon's business was much slower than she had been led to believe. An employee who had been away on vacation returned and told the plaintiff that the salon's client base was at most 300. The employee informed the plaintiff that the tanning bed had never been used because the salon's insurer refused to cover it and that the salon's demand was inadequate to support even one full-time manicurist. The revenue from product sales was much less than the cost of rent. Utility bills were substantially higher than represented. The salon was not, in fact, a "signature salon." Throughout the summer months, business did not improve.

On September 24, 1994, the plaintiff's attorney wrote a letter to the defendants' attorney, accusing the defendants of making material misrepresentations about the salon during the negotiations and demanding either rescission of the contract of sale or damages. The defendants did not comply with those demands and, on January 12, 1995, the plaintiff filed her complaint with the court.

"The essential elements of a cause of action in fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . All of these ingredients must be found to exist; and the absence of any one of them is fatal to a recovery. . . . Additionally, [t]he party asserting such a cause of action must prove the existence of the first three of [the] elements by a standard higher than the usual fair preponderance of the evidence, which higher standard we have described as 'clear and satisfactory' or 'clear, precise and unequivocal.' " (Citations omitted; internal quotation marks omitted.) *Citino* v. *Redevelopment*

*Agency,* 51 Conn. App. 262, 275–76, 721 A.2d 1197 (1998).

"Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact. . . . The trier of facts is the judge of the credibility of the testimony and of the weight to be accorded it." (Citation omitted; internal quotation marks omitted.) *Maturo* v. *Gerard,* 196 Conn. 584, 587–88, 494 A.2d 1199 (1985). When the trial court finds that a plaintiff has proven all of the essential elements of fraud, its decision will not be reversed or modified unless it is clearly erroneous in light of the evidence and the pleadings in the record as a whole. *Miller* v. *Appleby,* 183 Conn. 51, 55, 438 A.2d 811 (1981).

The defendants claim that the statements they made to the plaintiff were only opinions as to the future profitability of the salon, not statements of fact, and, therefore, the first element of fraud was not satisfied. We disagree.

"The requirement that a representation be made as a statement of fact focuses on whether, under the circumstances surrounding the statement, the representation was intended as one of fact as distinguished from one of opinion. . . . It is sometimes difficult to determine whether a given statement is one of opinion or one of fact, inasmuch as the subject matter, the form of the statement, the surrounding circumstances, and the respective knowledge of the parties all have a bearing upon the question. . . . [E]ach case must in a large measure be adjudged upon its own facts." (Citation omitted; internal quotation marks omitted.) *Meyers* v. *Cornwell Quality Tools, Inc.,* 41 Conn. App. 19, 28–29, 674 A.2d 444 (1996).

In *Meyers,* we held that assertions regarding expected revenue and income, made by the defendant to the

plaintiff to induce the latter to purchase a tool dealership, were statements of fact rather than opinion. Id., 29–30. The referee in this case similarly found that the representations of gross and net monthly income were not opinions, but representations of fact. The referee concluded that "[t]he evidence was clear, precise and unequivocal that Lacerenza, as president of the corporate defendant, made false representations to Anastasia as statements of fact, and that those statements were untrue at the time they were made, and known to be untrue by Lacerenza. Furthermore, the statements were made to induce Anastasia to purchase the salon, which, in fact, she did, to her injury."

Our review of the record convinces us that the referee's factual findings were not clearly erroneous. Further, the conclusion reached by the referee and accepted by the court that the defendants made fraudulent misrepresentations to induce the plaintiff to purchase the salon to her detriment was clearly, precisely and unequivocally supported by the subordinate facts found, and was legally and logically correct.

## II

The plaintiff and the defendants make a number of additional claims on the appeal and cross appeal.[11] We decline to review them, however, because the record is inadequate.

The record is inadequate for review because the referee's report is either unclear or incomplete, or com-

---

[11] In addition to their claim that fraud was not proven, the defendants claim that the court improperly accepted the findings and recommendations of the referee because: (1) the plaintiff failed to prove damages; (2) the referee did not make separate findings for each defendant; (3) the referee admitted hearsay evidence; and (4) the plaintiff's claims of misrepresentation during negotiations for the purchase and sale of the salon did not survive the closing of the transaction at issue. The plaintiff, in her cross appeal, claims that the court improperly accepted the referee's calculation of damages.

pletely void of findings or recommendations regarding the parties' claims of error because those claims were first raised to the trial court in the parties' exceptions and objections to the referee's report. See footnotes 7 and 8. Further, we have not been provided with either a written memorandum of decision or a transcribed copy of an oral decision, signed by the trial court, stating its reasons for overruling the parties' exceptions and objections, and accepting the referee's findings and recommendations in total. See Practice Book § 64-1 (a); *Buchetto* v. *Haggquist*, 17 Conn. App. 544, 547–49, 554 A.2d 763, cert. denied, 211 Conn. 808, 559 A.2d 1141 (1989).

"The duty to provide this court with a record adequate for review rests with the appellant[s]." *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 607, 710 A.2d 190 (1998); Practice Book § 60-5. An appellant's "utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Ginsberg* v. *Fusaro*, 225 Conn. 420, 431, 623 A.2d 1014 (1993).

"We, therefore, are left to surmise or speculate as to the existence of a factual predicate for the trial court's rulings. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Internal quotation marks omitted.) *Alix* v. *Leech*, 45 Conn. App. 1, 5, 692 A.2d 1309 (1997).

Because the court did not articulate the factual or legal basis for its decision to accept the findings and

recommendations of the referee, despite the parties' exceptions and objections to the referee's report, and because the report contains no analysis of those claims, the record is inadequate for our review, and we are precluded from reaching the issue of whether the court decided properly.

The judgment is affirmed.

In this opinion the other judges concurred.