[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs in this case, Harold Cohn Company (Cohn), Prairie Dog Trading Company (Prairie Dog) and Robert Dickerson,[1] brought a nine count complaint against the defendants, Harco International, LLC (Harco) and Christopher Komondy (Komondy). The complaint alleges breach of contract, fraudulent inducement, unjust enrichment, breach of the covenant of good faith and fair dealing and a violation of General Statutes § 42-110 et seq., the Connecticut Unfair Trade Practices Act (CUTPA). From the trial testimony and evidence presented, the court finds the following facts.
Robert Dickerson is the president of both Cohn and Prairie Dog. Cohn's sole business is to sell and manufacture supplies for the stamp and coin hobbyists. In 1997, Cohn's supplies and equipment were located in a factory in Wisconsin. The plaintiff leased the premises from Hufcorp.
In November of 1997, Robert Dickerson was diagnosed with liver cancer. The doctor's prognosis was that he had six months to live. Around the same time, he fell behind in his rent payments to Huffcorp. As a result of these two conditions, the plaintiff decided to sell Cohn.
Sometime in January 1998, Komondy read an article in a trade journal that noted that the plaintiff wished to sell his business. Komondy's interest was further "piqued" because the article indicated that the seller was "distressed and in trouble" and because he was in the business of buying and liquidating distressed businesses.
Shortly thereafter, Komondy contacted the plaintiff. They communicated several times over the next two months, negotiating the sale of Cohn's assets.
On April 4, 1998, Komondy and the plaintiff met at the factory in Wisconsin. Komondy's purpose was to inspect the factory and equipment before negotiating further. At the time, the plaintiff stated that he wanted $175,000 for the sale but he would consider $160,000. On April 15, 1998, the two parties came to an agreement for the sale of the business for the purchase price of $160,000. CT Page 5762
On April 16, 1998, Komondy contacted Mark McGovern, the deputy director of the Hartford Economic Development Commission (HEDC). McGovern's duties at the HEDC included funding businesses wishing to expand into Connecticut by offering statebacked loans. In order to buy Cohn, Komondy needed additional capital and wished to acquire this capital through a loan from the state of Connecticut.
Sometime between April and July, Komondy formed Harco, a Connecticut limited liability company. He was the sole member of Harco and the solitary purpose of Harco was to buy Cohn's assets.
On July 18, 1998, Komondy telephoned Robert Dickerson. Komondy stated that he would travel to the plaintiffs home in Texas, bringing a bill of sale and two promissory notes. He told the plaintiff that the promissory notes would equal $160,000, the sale price of Cohn's assets.
On July 21, 1998, Komondy submitted a pre-application form to the HEDC. In the form, he requested financial assistance in the amount of $290,000. Under the subsection titled "Project Costs," he listed $175,000 as the cost of machinery and equipment. Komondy requested a loan totaling $290,000 in order to buy and operate the coin and stamp hobby supplies business. The end of the pre-application contains a standard declaration that the applicant has supplied true and correct information.
As part of the pre-application, HEDC required that Komondy submit other pieces of information. He did submit a picture book of Cohn's assets and Cohn's past tax returns. He failed, however, to submit a business plan, projections of future financial statements and balance sheets. After the initial meeting, Komondy never again met with McGovern or any other HEDC representative.[2]
On July 22, 1998, Komondy traveled to the plaintiffs home in Texas. Though the plaintiffs and Komondy's versions of this day's events contradict, this court finds that the following occurred. Prior to the meeting on the 22nd, Komondy and the plaintiff agreed that he would bring two promissory notes. One would be for $120,000 and the other would be for $40,000, the combined notes representing the sale price of Cohn and its assets. The plaintiffs wife, Carol Dickerson, was present when the plaintiff and Komondy signed the agreements.
Komondy, despite prior representations, presented only one promissory note. The note was for $120,000, payable when Harco received the loan from Connecticut. Instead of the $40,000 note, Komondy presented a "consulting agreement" that would compensate Prairie Dog $40,000 and, in exchange, Prairie Dog would "assist in general operation of the CT Page 5763 business, consult in the development of new products, consult in the development of new formulations, assist with barcoding of products, consult in the completion of existing contracts, identify new sources of raw materials, seek out subcontractors, consult in obtaining patents and trademarks, [and] consult in the development of foreign and domestic markets." This agreement was to last for a period of three years with payments of $1000 a month plus a $4000 bonus at the end of the three years.
Both Dickersons expressed surprise with the consulting agreement. They reiterated the fact that the plaintiff was diagnosed with a fatal disease and was given a short time to live. Komondy assured them that this agreement was merely for bookkeeping purposes to allow him to make partial payments over time. He further assured them that he had obtained a loan from the state of Connecticut that would be processed once he submitted the signed documents. Komondy stated that the loan would be processed in two weeks and, at that time, he would pay the promissory note. When asked what would happen if the loan did not get approved, Komondy represented that he had enough resources to pay the purchase price. The plaintiff testified that he would not have signed the bill of sale, promissory note or the consulting agreement were it not for these representations.
Shortly after signing the documents, Komondy and the plaintiff made an oral agreement whereby the plaintiff would go to Wisconsin and help Komondy operate the business for a short time. The plaintiff fulfilled his agreement by working for eight months. The plaintiff was able to fulfill the oral agreement because he would did start his intensive cancer treatment immediately.
The plaintiff fulfilled the oral agreement and was paid for his services. Komondy, however, did not pay for the purchase of Cohn. He also failed to secure a loan from the state of Connecticut.
 II A 1 Fraud in the Inducement
The plaintiff alleges that Komondy's statements were fraudulent and induced him to sign the three documents at issue in this case. "The essential elements of a cause of action in fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and CT Page 5764 known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his in. . . . All of these ingredients must be found to exist; and the absence of any one of them is fatal to a recovery. . . . Additionally, [t]he party asserting such a cause of action must prove the existence of the first three of [the] elements by a standard higher than the usual fair preponderance of the evidence, which higher standard we have described as `clear and satisfactory' or `clear, precise and unequivocal. (Citations omitted; internal quotation marks omitted.) Citino v. Redevelopment Agency, 51 Conn. App. 262, 275-76,721 A.2d 1197 (1998).
"Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact. . . . The trier of facts is the judge of the credibility of the testimony and of the weight to be accorded it. (Citation omitted; internal quotation marks omitted.) Maturo v. Gerard, 196 Conn. 584,587-88, 494 A.2d 1199 (1985)." (Internal quotation marks omitted.)Anastasia v. Beautiful You Hair Designs, Inc., 61 Conn. App. 471, 477-78,767 A.2d 118 (2001).
The court finds that the alleged false representations in this case are: (1) that the defendants had already been approved for a loan by the state of Connecticut (2) that the consulting agreement was required solely for bookkeeping purposes and (3) if the loan, for some reason, was not approved Komondy would still be able to purchase Cohn.
In their second count, the plaintiffs allege that "[o]n diverse dates prior to the execution of this agreement, including July 22, 1998, the defendant Christopher Komondy, fraudulently induced the plaintiffs to enter into a subject contract and attachments by representing to the plaintiffs that the defendants had in fact been approved for a loan from the State of Connecticut, the proceeds of which would be immediately utilized to pay the plaintiffs. Christopher Komondy indicated that the signed documents were needed so that payment would be forthcoming directly to the plaintiffs." Count two pertains to all three documents: the sales agreement, the promissory note and the so-called consulting agreement.
This court finds that the plaintiff has proven the facts alleged in the second count with clear and satisfactory evidence. Moreover, the court finds that Komondy's testimony is not credible. His credibility was impeached because, while at this trial he testified that the actual sales price was $120,000, he stated at the prejudgment remedy hearing that the price was $160,000 with "no haggling." Carol Dickerson's concern over the consulting agreement is credible, however, given that her husband, Robert CT Page 5765 Dickerson, was given only six months to live.[3]
This court finds that the evidence proves the first element, that a false representation was made as a statement of fact, by clear and satisfactory evidence. "The requirement that a representation be made as a statement of fact focuses on whether, under the circumstances surrounding the statement, the representation was intended as one of fact as distinguished from one of opinion." (Internal quotation marks omitted.) Id. As proven by the plaintiffs, Komondy stated that he had obtained the loan from the state of Connecticut, that the consulting agreement was for bookkeeping purposes only and that even without the Connecticut loan he would be able to buy Cohn. The only contrary evidence is from Komondy, a witness who is not credible. This court finds that Komondy made statements of fact.
The second element requires that the statement of fact be untrue. Plaintiffs Exhibit 6 is a pre-application for the loan from the state. The date on the final page of the pre-application is "7-21-98." Komondy admits that he had never secured the loan. Because Komondy had not yet secured the loan, the statement of fact that he had been approved for the loan was, therefore, untrue. Moreover, Komondy did not believe the consulting agreement was merely for bookkeeping purposes. In this court, he has testified that he intended to uphold the agreement. Finally, Komondy never intended to pay for the business, failing a loan from Connecticut, by using his own assets. The evidence demonstrates that he either never intended to use his personal assets or that he did not have enough assets to do so. The plaintiff has proven this element by clear and satisfactory evidence.
The third element requires that the false statements of fact be made in order to induce the other party to act. It is true that part of the haste of the agreement was due to the plaintiffs illness. Robert and Carol Dickerson both testified, however, that they had balked at the idea of the consulting agreement. Komondy made his assurances to assuage their concerns. The plaintiff further testified that if not for these promises, he would not have signed the documents on July 22, 1998. The signed promissory note tends to prove the belief in these representations because it does not provide for any interest rate or partial payments of the note. That the parties signed a written consulting agreement and then entered into an oral agreement demonstrates that the plaintiff had good reason to believe that the written agreement was for bookkeeping purposes only. Moreover, Komondy is not credible in his testimony when he stated that the plaintiff wished for him to buy the company and "worry about the payment later." If so, then there would be no need for the condition precedent that referenced the Connecticut loan, because the plaintiff supposedly did not care how payment would be made. Accordingly, the court CT Page 5766 finds that the plaintiff would not have signed the documents but for Komondy's false statements.
Finally, the plaintiff must prove by a preponderance of the evidence that his action upon the misrepresentation was to his injury. Komondy testified that all of Cohn's assets, except for one machine, were moved from Wisconsin to Connecticut.[4] In exchange, the plaintiff has received only $1000 of the purchase price. Accordingly, the plaintiff has proven injury and has, accordingly, proven all the elements of fraudulent inducement.
 2
Having proven fraudulent inducement, the question now becomes whether Harco, Komondy or both may be liable for the fraudulent conduct. The actual misrepresentations were made by Komondy, the sole member of Harco. Komondy's actions as a sole member of Harco were akin to a sole shareholder who is also the president of a corporation. "Under the doctrine of respondent superior, the liability of a corporation for the actions of an officer depends upon whether the officer is acting within the scope of his authority. Donsco, Inc. v. Casper Corporation,587 F.2d 602, 606 (3d Cir. 1978); H. Henn J. Alexander, Laws of Corporations (3d Ed. 1983) § 230." Kilduff v. Adams, Inc.,219 Conn. 314, 332 n. 20, 593 A.2d 478 (1991).
Though Kilduff deals exclusively with corporations and not limited liability companies, there is no logical reason to apply different rules of agency between corporations and limited liability companies. In this case, Komondy's job was to operate and manage Harco. Harco was formed primarily to purchase and operate Cohn. Accordingly, it was within the scope of Komondy's duties to purchase Cohn. Moreover, even if the misrepresentations were made while Komondy was acting outside his scope of authority, Harco accepted the contracted goods, thus ratifying the actions of Komondy. See id. Accordingly, Harco is liable for the misrepresentations.
The plaintiff has also sued Komondy individually. In doing so, he has asked that the court pierce the "corporate" veil to reach Komondy and has contended that such action may be taken against a limited liability company.
This court, however, need not pierce any kind of veil. "It is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation itself is liable. Donsco, Inc. v. Casper Corporation, 587 F.2d 602, 606
(3d Cir. 1978); Scribner v. O'Brien, Inc., 169 Conn. 389, 404, 363 A.2d 160
CT Page 5767 (1975); First National Bank Trust Co. v. Manning, 116 Conn. 335, 340,164 A. 881 (1933); Semple v. Morganstern, 97 Conn. 402, 404, 116 A. 906
(1922); H. Heun J. Alexander, Laws of Corporations (3d Ed. 1983) § 230; 19 Am.Jur.2d, Corporations § 1882. The same rule would impose personal liability on a shareholder as well. Wyatt v. Union Mortgage Co.,24 Cal.3d 773, 785, 598 P.2d 45, 157 Cal.Rptr. 392 (1979); 13A W. Fletcher, Cyclopedia of the Law of Private Corporations (Perm. Ed. 1985) § 6214." Id., 331-32.[5] Accordingly, because this court has found that Komondy committed the fraudulent actions, he may also be held liable individually.
 3
Because the plaintiff has proven fraudulent inducement and both defendants are liable, this court must decide what remedy to award the plaintiffs. In this action, the plaintiff has requested monetary damages. "At the option of the defrauded party, where there has been fraud in the inducement of the contract, the contract is voidable or subjects the defrauding party to a suit for damages. A. Sangivanni Sons v. F.M.Floryan Co., 158 Conn. 467, 472, 262 A.2d 159 (1969). The party defrauded has the option of electing either to rescind the contract or to claim damages for the breach of the contract. Pacelli Bros.Transportation, Inc. v. Pacelli, 189 Conn. 401, 409-10, 456 A.2d 325
(1983)." Kim v. Magnotta, 49 Conn. App. 203, 223, 714 A.2d 38 (1998) (dissent, Lavery, J.), judgment rev'd by, 249 Conn. 94, 733 A.2d 809
(1999). The plaintiff has not sought recission of the contract but, instead, has asked for enforcement of the contract and damages thereunder.[6]
"In an action for breach of contract, the general rule is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that he would have been in had the contract been performed. Lar-Rob Bus Corp. v. Fairfield, 170 Conn. 397,404-405, 365 A.2d 1086 (1976). Such damages are known as compensatory damages." (Internal quotation marks omitted.) City of Hartford v.International Assn. of Firefighters, Local 76, 49 Conn. App. 805, 815,717 A.2d 258, cert. denied, 247 Conn. 920, 722 A.2d 809 (1998). "There are no unbending rules as to the evidence by which [damages for breach of contract] are to be determined." (Internal quotation marks omitted.)Foley v. Huntington Co., 42 Conn. App. 712, 743, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996).
The sales contract purports to sell the business for $120,000. The plaintiff, however, contends that the actual agreement was to sell the business for $160,000 and that Komondy represented that the $40,000 consulting agreement merely constituted a bookkeeping scheme to allow CT Page 5768 Harco to make periodic payments. The plaintiff and the defendants acknowledge that there is a separate oral consulting agreement that did not affect the sales price.
Because there were two consulting agreements and that this court found that Komondy misrepresented the nature of the written consulting agreement, the court finds that Cohn's selling price was $160,000. This finding is supported by Komondy's testimony to the court that he had previously testified in the prejudgment remedy hearing that the price was $160,000, "no haggling."
The defendants, however, are entitled to some set-offs.[7] The plaintiff testified that Komondy paid $1,000 under the contract. He further testified that Komondy assumed some of Cohn's debts.
The defendant submitted three checks to prove payment of these debts. The first is made out to Timothy Thompson and is in the amount of $600. The second, to Thomas Tape Company, is in the amount of $748.76. The last one is made out to BD Industrial Chemical for $5743.75. Accordingly, the court finds that the defendant is entitled to a set-off in the amount of $8092.51. Accordingly, to put the plaintiff in the same position he would have been in had there been no fraud, this court awards the plaintiff $151,907.49.
 B 1 VIOLATION OF CUTPA
The court must determine whether the defendants violated CUTPA.[8]
"In determining whether a practice violates CUTPA we use the criteria of whether a practice offends public policy or comes within some established concept of unfairness, whether the practice is immoral, unethical, oppressive or unscrupulous or whether it causes substantial injury to consumers, competitors or other businessmen. . . .
"CUTPA embraces a broader standard of conduct more flexible than traditional common law claims and does not require proof of intent to deceive, to mislead or to defraud. . . . A violation may be established by showing either an actual deceptive practice or a practice that violates public policy." (Citations omitted.) Muniz v. Kravis,59 Conn. App. 704, 713, 757 A.2d 1207 (2000).
In their argument, the defendants raise an issue that they claim precludes the plaintiffs recovery on a CUTPA violation. They claim that "a CT Page 5769 single act can be a CUTPA violation only if the party is in the business of entering into transactions of the type that is at issue." (Defendants' Post-Trial Brief, p. 21.)
The Connecticut Superior Court has split over whether one must be engaged in his normal type of trade or commerce in order for a single transaction to constitute a violation of CUTPA. See, e.g., Holeva v.MZ Associates, Superior Court, judicial district of New Haven, Docket No. 098403 (November 9, 1998, Levin J.) (23 Conn.L.Rptr. 601); Larson Skiba Associates, Inc. v. CC Package Store, Inc., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 530707 (December 13, 1993, Corradino, J.) (9 C.S.C.R. 62). This court, however, need not determine which line of cases is more persuasive.
Komondy testified that he was in the business of buying distressed companies and then liquidating them. On cross-examination he admitted that he had attended twenty to forty public auctions, foreclosures and sales for just that purpose. Additionally, Komondy organized Harco for the purpose of buying Cohn. Accordingly, the court finds that the defendants were in the business of buying companies such as Cohn and their actions may, therefore, implicate CUTPA.
 2
Finding that the defendants were in the business of buying distressed companies, this court must now determine if they violated CUTPA. "Section42-110b (a) provides that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Hartford Electric Supply Co.v. Allen-Bradley Co., 250 Conn. 334, 367-68, 736 A.2d 824 (1999).
"A simple breach of contract, even if intentional, does not amount to a violation of the Act; a [claimant] must show substantial aggravating CT Page 5770 circumstances attending the breach to recover under [CUTPA]." (Internal quotation marks omitted.) Emlee Equipment Leasing v. WaterburyTransmission, 41 Conn. Sup. 575, 580, 595 A.2d 951 (1991), quotingBartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989);United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981). Having found a fraudulent misrepresentation made by Komondy while engaging in his business, this court must determine whether such a situation constitutes an aggravating circumstance.
"It has been held that a `misrepresentation' can constitute an aggravating circumstance that would allow a simple breach of contract claim to be treated as a CUTPA violation; it would in effect be a deceptive act." Designs On Stone, Inc. v. Brennan Construction Co., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 059997 (April 9, 1998, Corradino, J.) (21 Conn.L.Rptr. 659). See also, The Production Equipment Co. v. Blakeslee Arpaia Chapman, Inc., Superior Court, judicial district of New Haven at Meriden, Docket No. 247458 (January 3, 1996, Silbert, J.) (15 Conn.L.Rptr. 558); CNFConstructors, Inc. v. Culligan Water Conditioning Co., Superior Court, judicial district of New Haven at Meriden, Docket No. 242302 (September 9, 1993, Blue, J.) (8 C.S.C.R. 1057). In this case, misrepresentation was an aggravating factor to the breach of contract. Accordingly, this court finds that the defendants violated CUTPA.[9]
 2
General Statutes § 42-110g (a) provides in pertinent part that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action. . . . to recover actual damages. . . . The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper." General Statutes § 42-110g (d) provides in pertinent part that "[i]n any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of the recovery."
Because this court has awarded the plaintiff actual damages under the contract, it need not award actual damages for the violation of CUTPA. The plaintiff, however, has requested punitive damages and an award of attorney's fees.
"Awarding punitive damages and attorney's fees under CUTPA is discretionary. . . . Punitive damages are awarded when the evidence shows CT Page 5771 a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . . The flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." (Citations omitted; internal quotation marks omitted.) Nielsen v. Wisniewski,32 Conn. App. 133, 138, 628 A.2d 25 (1993).
Balancing the equities in this case, the court finds that an award of punitive damages and attorneys' fees is not justified. Though Komondy's actions were fraudulent, this court finds that the actions were not egregious nor outrageous, nor the result of reckless or wanton disregard of the plaintiffs rights. Accordingly, this court, in exercising its discretion, will decline to award punitive damages and attorneys' fees to the plaintiff.
 III
This court finds that the plaintiff has proven that the defendants committed fraudulent inducement and, thereby, violated CUTPA. Accordingly, this court awards the plaintiff $151,907.49
It is so ordered.
By the court
GILARDI, J.